NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-5421
        Facsimile: (213) 894-0142
        E-mail: brent.whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:20-CV-02415 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. § 981(a)(1)(C) |
| $230,520.00 IN U.S. CURRENCY, | [IRS-CI] |
| Defendant. | |

The United States of America brings this claim against

$230,520.00 in U.S. Currency and alleges as follows:

**JURISDICTION AND VENUE**

1.    This is a civil forfeiture action brought pursuant to 18

U.S.C. §§ 981(a)(1)(C).

2.    This court has jurisdiction over the matter under 28 U.S.C.

§§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4.    The plaintiff in this action is the United States of America.

5.    The defendant in this action is $230,520.00 in U.S. Currency (the "defendant currency").  The defendant currency was seized on June 11, 2019 during the execution of a federal search warrant at the following locations:

   a.    $8,603.00 seized at 10161 Bolsa Avenue, Unit 207A, Westminster, California.

   b.    $13,699.00 seized at 9039 Bolsa Avenue, Suite 206, Westminster, California.

   c.    $208,218.00 seized at Rosemary and Jimmy Pham's Midway City, California residence (the "Pham Residence").[1]

6.    The defendant currency is currently in the custody of the Internal Revenue Service in this District, where it shall remain subject to this court's jurisdiction during the pendency of this action.

7.    The interests of Anton Nguyen ("Nguyen"), Rosemary Pham and Jimmy Pham may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

8.    This complaint arises from an investigation by the Criminal Investigative Division of the Internal Revenue Service ("IRS-CI") of a scheme to obtain fraudulent federal income tax refunds.

---

[1] Pursuant to Local Rule 5.2-1, only the city and state of personal residence addresses are set forth in this Complaint.

2

1  SUMMARY OF FRAUDULENT SCHEME

2      9.   As set forth in more detail below, John Tran ("Tran")

3  caused fraudulent federal income tax returns to be filed that claimed

4  extensive refunds to which the taxpayers were not entitled.  Tran

5  shared the proceeds of the fraud scheme with Nguyen, Rosemary Pham

6  and Jimmy Pham.

7      10.  Beginning in at least 2012, Tran, Nguyen, Rosemary Pham and

8  Jimmy Pham committed various federal offenses.  Tran was employed by

9  the County of Orange, Social Services Agency ("SSA").  Tran would

10  abuse his position of public trust to steal personal identifying

11  information (sometimes referred to herein as "PII") belonging to SSA

12  clients and others.  These persons were typically SSA applicants or

13  clients, with whom Tran met when they went to SSA for assistance.

14  Tran and his co-schemers would then use the stolen PII to

15  fraudulently obtain money from the United States of America, the

16  State of California, the County of Orange and from financial

17  institutions.  The fraudulent acts included the filing of false

18  Federal and state tax returns in the names of the identity theft

19  victims, welfare fraud, underreporting income and falsely claiming

20  deductions on their personal tax returns, as well as obtaining

21  Federal income tax refunds to which the victims were not entitled.

22      11.  Between 2012 and 2019, Tran caused the Internal Revenue

23  Service ("IRS") to issue tax refund payments purportedly to Tran's

24  SSA clients but which were actually diverted to Tran and his co-

25  schemers.  The returns were fraudulent insofar as the taxpayers did

26  not actually file the returns or authorize Tran to file the returns

27  on their behalf.  Additionally, the returns falsely reported income

28

3

1  and in many instances falsely claimed individuals as dependents in

2  order to maximize the amount of the fraudulent tax refund that Tran

3  could obtain.

4  OPERATION OF THE FRAUDULENT SCHEME

5      12.  In 2012, Tran was employed by the SSA as a case worker.  In

6  connection with his employment, Tran had access to the PII of persons

7  who received benefits from the SSA.

8      13.  Tran obtained corporate identifying information concerning

9  an inactive California corporation, DT Complete, from a friend and

10  owner of the corporation.

11      14.  Tran was acquainted with Nguyen, who was a tax preparer.

12  Tran asked Nguyen to generate fraudulent IRS Form 1099-MISC's

13  ("1099s") using the PII of SSA clients.  A Form 1099 is a statement

14  of income issued by the payor to a taxpayer, with a copy provided to

15  the IRS.  The 1099s gave the appearance that the taxpayer actually

16  received income which would in turn, when combined with claimed

17  deductions and tax credits, entitle the purported taxpayer to a tax

18  refund.

19      15.  One of Tran's SSA clients introduced Tran to Rosemary Pham,

20  who was also a tax return preparer.  Rosemary Pham also prepared

21  fraudulent 1099s for Tran.

22      16.  After receiving the fraudulent 1099s prepared by Nguyen and

23  Rosemary, Tran filed tax returns that claimed refunds of federal

24  income tax from the IRS.

25      17.  When Tran received the refunds from the IRS, he regularly

26  shared the fraudulently obtained refunds with Nguyen, Rosemary, and/

27

28

4

or the SSA clients whose personal identifying information he used to obtain the money.

18.   None of the SSA clients who submitted 1099s purportedly issued by DT Complete to the IRS were actually paid any money by DT Complete.

19.   In some cases the refunds paid to SSA clients were deposited by the IRS directly into Tran's bank account or accounts established in the names of stolen identities.   In other cases, a refund check from the IRS was sent to addresses controlled by Tran, Nguyen, or Rosemary, and funds were deposited by Tran.

20.   Rosemary told Tran that she could prepare amended returns for some of Tran's SSA clients and obtain even larger refunds from the IRS.   Tran agreed to file amended returns in the names of his SSA clients without their knowledge.   Tran forged the names of the taxpayers on the amended returns prepared by Rosemary and submitted the returns to the IRS.

21.   As part of the scheme, Nguyen prepared federal income tax returns for DT Complete, using DT Complete's Employer Identification Number, that purported to show it was an operating company, and that it had issued the fraudulent 1099s.   In fact, DT Complete had no business and had not made any of the payments reflected in the 1099s.

22.   Subsequently, Tran created a new company called CN Complete, using the name of one of his former SSA clients who no longer lived in the United States.   CN Complete had no actual business and was a fictitious entity created for the sole purpose of furthering the scheme.   Tran then started issuing 1099s on behalf of

CN Complete that purported to show payments by the corporation to taxpayers.  In fact, CN Complete made no payments.

23.   Tran engaged Nguyen to prepare federal income tax returns for CN Complete.  Tran provided Nguyen with all the individuals' information used to create 1099s, and Nguyen prepared returns that purported to show a net tax loss for CN Complete.  This was done so that CN Complete would not show a purported tax liability on its return.

24.   In circumstances where the SSA client was aware of the scheme, the perpetrators of the scheme retained 30 percent of the fraudulently obtained income tax refunds, and gave 70 percent to the SSA clients who filed fraudulent returns.  Tran split the 30 percent of the scheme proceeds evenly with Rosemary Pham, so they each received 15 percent of the total refunds.

25.   Pham also obtained refund checks from the IRS payable to SSA clients.  When refund checks were received at addresses controlled by Pham, she notified the SSA clients and took them to check cashing businesses in Orange County, California and cashed the checks.  Pham then gave a portion of the cash received from the IRS refund checks to the SSA taxpayer, and retained a portion of the funds for herself.

26.   Between May 8, 2012 and April 16, 2019, Pham made a total of 401 cash deposits into her accounts at Wells Fargo Bank, JP Morgan Chase Bank, Citibank, Cathay Bank, Bank of America, and Union Bank. These cash deposits totaled $1,524,131.24.

27.   On July 11, 2019, agents of IRS-CI executed federal search warrants at several locations, including

a.    The offices of Victory Tax Service located at 9039 Bolsa Avenue, Suite 206, Westminster, California, a business owned by Rosemary Pham and Jimmy Pham.

b.    The Pham Residence.

c.    The offices of Century Travel & Income Tax located at 10161 Bolsa Avenue, Unit 207A, Westminster, California, a business owned by Nguyen.

28.    During the searches, agents recovered the defendant currency in the locations set forth above.

29.    Based on the above, plaintiff United States of America alleges that the defendant currency constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 (mail fraud), and 1343 (wire fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant currency;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should be not be decreed;

/ / /

1        (c)  that this Court decree forfeiture of the defendant currency

2   to the United States of America for disposition according to law; and

3        (d)  for such other and further relief as this Court may deem

4   just and proper, together with the costs and disbursements of this

5   action.

6   Dated: December 23, 2020          NICOLA T. HANNA
                                      United States Attorney
7                                     BRANDON D. FOX
                                      Assistant United States Attorney
8                                     Chief, Criminal Division
                                      STEVEN R. WELK
9                                     Assistant United States Attorney
                                      Chief, Asset Forfeiture Section
10

11                                        _/s/ Brent A. Whittlesey_
                                      BRENT A. WHITTLESEY
12                                    Assistant United States Attorney

13                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**VERIFICATION**

I, Daniel Dreyer, hereby declare that:

1.   I am a Special Agent of the Criminal Investigation Division of the U.S. Internal Revenue Service ("IRS-CI").

2.   I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3.   Everything contained in the Verified Complaint for Forfeiture is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed _____December 23, 2020 in Los Angeles, California.

DANIEL DREYER
Special Agent
IRS-CI